IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

DAVID A. BECKERMAN,

        Plaintiff,

- v -

M. HIDARY & CO., INC.

        Defendant.

M. HIDARY & CO., INC.,

        Third-Party Plaintiff,

- v -

OFFICIAL STARTER, LLC,

        Third-Party Defendant.

DOCKET NO. 301 CV 2143 (SRU)

**LOCAL CIVIL RULE 56(a)1 STATEMENT
OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE TO BE TRIED**

1.      On or about May 2, 1997, Starter Corp. ("Starter"), as licensor, and defendant M. Hidary & Co., Inc. ("Hidary"), as licensee, entered into a licensing agreement pursuant to which Hidary was granted a license to use certain trademarks of Starter (the "Trademarks") in connection with Hidary's manufacture, sale and distribution of boys' and men's swimwear apparel products as defined in that Agreement (the "Authorized Products"). (See, Exhibit A to the Declaration of Evan Weintraub in Support

of defendant and third-party defendant's Motion for Summary Judgment, dated November 20, 2003 (the "Weintraub Decl.")).

2. The license granted to Hidary pursuant to the licensing agreement was effective until December 31, 2000. (Weintraub Decl., Ex. A, ¶ 3.1).

3. In June 1998, an Addendum to the licensing agreement (the "Addendum") also provided Hidary the right to use the Trademarks on active wear and school products. In connection with that Addendum, Hidary prepaid Starter $400,000 toward future royalties. (Weintraub Decl., Ex. B). (The license agreement and Addendum are herein referred to as the "Licensing Agreement"). As of April 20, 1999, the prepayment credit substantially exceeded $25,000.

4. Pursuant to the Licensing Agreement, Hidary agreed, inter alia, to pay Starter a royalty of eight (8) percent ("Percentage Royalties") on all net sales by Hidary of Authorized Products bearing the Trademarks. (Weintraub Decl., Ex. A, ¶ 5.1).

5. Paragraph 18.1 of the Licensing Agreement, provides, in relevant part, that "this Agreement will terminate automatically, without any notice or action being required of Licensor or Licensee, if Licensee or Licensor files a petition in bankruptcy or is adjudicated bankrupt or insolvent . . . ." (Weintraub Decl., Ex. A, ¶ 18.1)

6. Paragraph 20 of the License Agreement provides, in relevant part, that:

> After termination or expiration of the license under the provisions hereof, Licensee, except as otherwise provided in this Agreement, may dispose of Authorized Products bearing Marks covered by this Agreement which are in inventory or in process at the time notice of termination is received or upon the expiration date, whatever the case may be, for a period of one hundred twenty (120) days thereafter, on a non-exclusive basis, provided advance and Percentage

> Royalty payments are up-to-date for the current period and statements are furnished for that period in accordance with Section 5.4 and provided further that such items are disposed of only in the regular course of business and in accord with this Agreement as if it were not terminated or expired. After such one hundred twenty (120) day period, all Authorized Products shall be, at Licensor's election, sold to Licensor at manufacturer's cost or destroyed.

(Weintraub Decl., Ex. A, ¶ 20).

7. Starter retained an entity known as SoundView Licensing ("SoundView") to act as its agent and monitor the sales by, and the royalties due, from Hidary (and other licensees of Starter) on sales by Hidary of Authorized Products. In that regard, SoundView was specifically included as a party to the Licensing Agreement. (Weintraub Decl., Ex. A).

8. On April 19, 1999, Starter and its affiliates (Starter Outlet Stores, Inc., Starter Galt, Inc. and Starter Delaware, Inc., collectively, "Starter")) filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). (Weintraub Decl., Ex's. C, D, and E).

9. On July 14, 1999, Starter entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") with an entity known as New Starter LLC ("New Starter"). pursuant to which substantially all of the assets of Starter were transferred to New Starter (including but not limited to the Starter trademarks) on the closing date, July 29, 1999. (Weintraub Decl., Ex. F).

10. Pursuant to Section 2.2 of the Asset Purchase Agreement, all of Starter's licenses of the Trademarks and other agreements permitting third parties the right to use

the Trademarks (other than any agreements assigned to New Starter) were to be rejected by Starter pursuant to an order of the Bankruptcy Court or immediately upon the closing of the Asset Purchase Agreement. (Weintraub Decl., Ex. F, ¶ 2.2).

11. The Trademark Assignment Agreement annexed to and made a part of the Asset Purchase Agreement as Exhibit E, and delivered on the closing date, July 29, 1999, provides in relevant part that:

> [Starter and its affiliates] hereby sell, assign, transfer, set over and deliver to [New Starter], [Starter's] entire right, title and interest in and to the [Trademarks], along with the goodwill of [Starter's] business in connection with which the [Trademarks] are used, free and clear of any Encumbrance, and assign to and authorize [New Starter] to file or prosecute in its name, applications, in all countries, the same to be held and enjoyed by [New Starter], its successors, assigns, nominees or legal representatives, to the full end of the term or terms for which said [Trademarks] may be registered, as fully and entirely as the same would have been held and enjoyed by [Starter] had this assignment, sale and transfer not been made, **together with income, royalties, damages, or payments due on the date hereof [July 29, 1999] or thereafter**, including, without limitation, all claims for damages or payments by reason of infringement or unauthorized use of the [Trademarks], with the right to sue and collect for same for [Starter's] own use and enjoyment . . .

(Weintraub Decl., Ex. F) (emphasis added).

12. Pursuant to an Order dated July 14, 1999, the Bankruptcy Court approved the Asset Purchase Agreement and assignment of the Trademarks to New Starter free and clear of all encumbrances. (Weintraub Decl., Ex. G).

13. Pursuant to § 9.1 of the Asset Purchase Agreement, the closing was held on July 29, 1999 and the sale of the assets was effective on that date. (Weintraub Decl., Ex. F).

14. As a result of the Bankruptcy Court's July 14, 1999 Order: (a) The License Agreement was rejected by Starter; and (b) all of the Starter trademarks and all rights therein were transferred to New Starter on the closing date. Starter ceased to exist as an on-going entity.

15. In a letter dated July 30, 1999, Drew Sawyer at Parthenon Capital[1] ("Parthenon"), notified Hidary that a new company known as Official Starter LLC ("Official Starter") had acquired the name and all trademarks of Starter. Moreover, the License Agreement had been rejected as part of the Starter bankruptcy and that any royalties for Starter product sold on or after July 29, 1999 should be remitted to Official Starter. (Weintraub Decl., Ex. H).

16. In a memo dated August 8, 1999, Don Stapleton, President of SoundView, notified all Starter U.S. Licensees (including Hidary) that all royalties on sales of Starter merchandise after July 29, 1999, along with royalty reports should be sent to Official Starter. (Weintraub Decl., Ex. I).

17. Pursuant to the instructions received from Parthenon and SoundView, Hidary sent to Starter its last monthly royalty report covering the period July 1 – 28, 1999, together with a payment representing the balance due to Starter. (Weintraub Decl., Ex. J).

18. Furthermore and also in response to the aforementioned documents from Parthenon and SoundView, Hidary paid royalties on its sales of Licensed Products after July 28, 1999 to Official Starter.

---

[1] Parthenon Capital was part of the consortium known as New Starter LLC which became Official Starter LLC.

19. During the summer of 1999, Starter became involved in a lawsuit with Don Stapleton and SoundView. By August 1999, Starter learned that Stapleton had directed licensees to make the royalty payments for shipments after July 29, 1999 to Official Starter. (Weintraub Decl., Ex. L, pp. 13 – 16, 39 - 40). (See ¶ 16, supra).

20. At no time from the commencement of Starter's bankruptcy filing in April 1999 through October 10, 2001, did Starter inform Hidary (a) that SoundView had been terminated as Starter's agent; (b) that Hidary should make royalty payments to Starter for sales after July 28, 1999; or (c) to cease and desist from making any royalty payments to Official Starter.

21. On or about October 10, 2001, the Bankruptcy Court ordered the quitclaim assignment to Beckerman of certain accounts receivables, tax refunds and miscellaneous assets of Starter pursuant to an Assignment Agreement. (Weintraub Decl., Ex. K).

22. On November 15, 2001, Beckerman commenced this action claiming Hidary breached the License Agreement by failing to pay Starter all Percentage Royalties, Minimum Guarantees and Promotional Fees due thereunder. (Weintraub Decl., Ex. M).

23. On August 29, 2002, Hidary commenced a third-party action against Official Starter, seeking indemnification for any sums it may owe Starter. (Weintraub Decl., Ex. N).

24. On June 5, 2003, Hidary filed its Second Amended Answer. (Weintraub Decl., Ex. O).

WACHTEL & MASYR, LLP

By: _____
Evan S. Weintraub
Admitted Pro-Hac Vice
Attorneys for Third-party Defendant
Official Starter, LLC
110 East 59th Street
New York, New York 10022
Tel. (212) 909-9500
CT 23444

GOODKIND LABATON RUDOFF
& SUCHAROW LLP

By: _____
Edward Labaton
Admitted Pro-Hac Vice
Attorneys for Defendant
M. Hidary & Co., Inc.
100 Park Avenue
New York, New York 10017
Tel. (212) 907 – 0700
CT23784