CLERK
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

FEB 26   4 34 PM '04

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| DAVID A. BECKERMAN, | : | DOCKET NO. |
| Plaintiff, | : | |
| v. | : | 3:01 CV 2143 (SRU) |
| M. HIDARY & CO., INC., | : | |
| Defendant. | : | |
| | : | February 26, 2004 |

### AFFIDAVIT OF GARY LETENDRE

I, Gary Letendre, being first duly sworn, hereby depose and state:

1. I am over the age of 18 and believe in the obligation of an oath.

2. I submit this affidavit in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment.

3. I have personal knowledge of the facts contained herein.

4. I was the Plan Administrator in the Starter Bankruptcy.

5. Attached hereto as Exhibit A is a true and accurate copy of the Starter Licensing Agreement with Hidary dated May 2, 1997.

6. Attached hereto as Exhibit B is a true and accurate copy of an Addendum to the License Agreement dated June 4, 1998.

7.  As part of the bankruptcy proceedings, Starter sold certain assets, including its trademarks, to a buyer called New Starter. The general agreement for that sale is set forth in the Asset Purchase Agreement dated July 14, 1999, a copy of which is annexed hereto as Exhibit C. The "Assigned Contracts" referenced therein included the License Agreement with Hidary. The auction was held and the Asset Purchase Agreement was approved by the Court prior to the Bankruptcy Plan being confirmed.

8.  I was involved in the negotiation of the Asset Purchase Agreement between Starter and Official Starter. The Asset Purchase Agreement was negotiated prior to confirmation of the bankruptcy plans.

9.  The Asset Purchase Agreement was initially drafted with the intention that the Purchaser would take over the license agreements, including the Agreement that is the subject of this action.

10. During the negotiations, the Purchasers decided not to purchase the license agreements. The Assignment and Assumption Agreement appearing as part of Exhibit E to the Asset Purchase Agreement was crossed out and never signed.

11. The Bankruptcy Court approved the sale of certain of Starter's assets to Official Starter. The Assigned Contracts and the right to receive royalties under the license agreements were specifically excluded from the sale by the Bankruptcy Court in approving the Asset Purchase Agreement, as set forth in Footnote 1 of the Court's

order. A true and accurate copy of the Bankruptcy Court order approving the sale is attached hereto as Exhibit D.

12.     Following the closing on the Asset Purchase Agreement, the debtor used the trademarks for limited purposes including selling inventory at the Outlet stores and collecting royalties on the licensing agreements for the sale of inventory on hand and in process at the time of the bankruptcy.

13.     A Non-Exclusive License Agreement was attached to the Asset Purchase Agreement filed with and approved by the Bankruptcy Court, a copy of which is annexed hereto as Exhibit E. This Agreement allowed the debtor in possession to continue to collect royalties on the existing license agreements for a period of two years.

14.     After the closing on the sale of the trademarks on July 29, 1999, Starter was permitted to sell goods in the Outlet Stores and to continue to use the licenses for limited purposes, including the sale of inventory on hand or in process, and the collection of royalties thereon.

15.     Starter licensed its trademarks to many different apparel manufacturers and distributors and accessory companies, including M. Hidary & Company, Inc.

16.     The Debtor in possession received the proceeds from the liquidation of the Outlet Stores inventory.

17.     The money received from the liquidation was used to pay off creditors including the banks which were involved in negotiating the Asset Purchase Agreement.

18. During the middle of 1999, Starter changed its name to SC New Haven and began liquidating its assets.

19. The assets of Starter were divided into two pots: (1) unsecured creditors and (2) assets that were liquidated by the plan administrator to pay off secured creditors.

20. All rights to collect royalties due to the Debtors or their estates (or due to the Plan Administrator under the confirmed plan) on certain licensing agreements, including the License Agreement with M. Hidary & Company, Inc., were assigned to David Beckerman in partial satisfaction of his allowed claims against the bankruptcy estate. A true and accurate copy of the Bankruptcy Court's order of October 10, 2001, which authorized and approved of the Assignment Agreement under which those rights (among other things) were assigned to Mr. Beckerman, is attached hereto as Exhibit F.

21. David Beckerman's status as a creditor was based on his execution of a personal guarantee of $22 million to Starter.

22. While I was Plan Administrator, I focused on the easiest assets to liquidate. Collecting from reluctant payers of debts stemming from the licensing agreements became lower priority.

23. Hidary did not make any payments of royalties to Starter for any sales of inventory on hand or in process at the time of the sale of the trademarks.

24. Hidary failed to make all Advertising expenditures required under the License Agreement.

25. Hidary claims that it received instructions from Soundview Licensing to send royalty payments received following July 29, 1999 to New Starter, with the understanding that Soundview was Starter's agent. However, the Licensing Agency Agreement between Starter and Soundview Licensing was rejected by Order of the Bankruptcy Court effective July 29, 1999. A true and accurate copy of the Order of the Bankruptcy Court is attached hereto as Exhibit G.

_____
Gary Letendre

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 26th DAY OF February, 2004.

_____
Brian C. Fournier
Commissioner of the Superior Court