## NON-EXCLUSIVE LICENSE AGREEMENT

**THIS AGREEMENT** is effective as of the 29th day of July, 1999 (the "Effective Date"), by and between Official Starter LLC, formerly known as Schottenstein/SC Acquisition LLC (hereinafter "Licensor"), a Delaware limited liability company and Starter Corporation, Starter Galt, Inc., Starter Outlet Stores, Inc. and Starter Delaware, Inc. (hereinafter collectively "Licensees"), Delaware corporations.

WHEREAS, Licensor and Licensees are parties to an Asset Purchase Agreement (the "Purchase Agreement") to which this Agreement is an associated and appended Agreement and pursuant to which Licensor purchased from Licensees the trademarks and service marks (hereinafter the "Marks") listed on Schedule A, which is incorporated herein by reference; and

WHEREAS, Licensees are desirous of non-exclusively licensing and using the Marks in connection with (i) the operation of certain discount outlet stores (the "Outlet Stores"), (ii) the sale of certain goods currently in Licensees' inventory, goods which the Licensees are contractually obligated to purchase, work in process, goods which are validly returned to Licensees and other assets of Licensees which are not included in the Purchased Assets (as defined in the Purchase Agreement), (iii) the completion of Licensees' bankruptcy proceedings and (iv) otherwise as reasonably required in order for Licensees to comply with applicable law (collectively, the "Permitted Uses"), subject to the terms and conditions of this Agreement;

NOW THEREFORE, in consideration of the foregoing, including the agreement by the undersigned to the aforesaid Asset Purchase Agreement, and for the mutual promises hereinafter set forth, the parties agree as follows:

1. **Grant of Non-Exclusive License**

    Licensor grants to Licensees the non-exclusive, nontransferable license (the "License") to use the Marks solely in connection with Permitted Uses and Licensees accept the aforesaid license subject to the following terms and conditions:

2. **Ownership of Mark**

    Licensees acknowledge the ownership of the Marks in Licensor, agree that they will do nothing inconsistent with such ownership and that all use of the Marks by Licensees shall inure to the benefit of and on behalf of Licensor. Licensees further agree

to assist Licensor in recording this License with the appropriate government authorities and in connection with any other trademark related matters to the extent reasonably requested by Licensor. Licensees agree that nothing in this License shall give Licensees any right, title or interest in the Marks other than the right to use the Marks in accordance with this License and Licensees and Licensor agree that they will not attack the title of Licensor to the Marks or attack the validity of this License.

3. **Quality Standards**

Licensees agree that the nature and quality of all Outlet Stores bearing the Marks and the operation thereof, goods sold by Licensees and all related advertising, promotional and other related uses of the Marks by Licensees shall conform to the standards previously maintained by Licensees in connection therewith or as otherwise reasonably set by Licensor.

4. **Quality Maintenance**

Licensees agree to cooperate with Licensor in facilitating Licensor's control of the nature and quality described in Paragraph 3, and to supply Licensor with specimens of all uses of the Marks upon request. Licensor shall have the right to take all actions which it reasonably deems necessary or appropriate to assure the maintenance by the Licensees of the quality standards set forth herein. Licensees shall comply with all applicable laws and regulations and obtain all appropriate government approvals pertaining to the operation of the Outlet Stores and/or the sale and advertising of goods and services under the Marks.

5. **Infringement Proceedings**

Licensees agree to notify Licensor of any unauthorized use of the Marks by others promptly as such use comes to Licensees' attention. Licensor shall have the sole right to bring infringement or unfair competition actions enforcing the Marks.

6. **Term**

This Agreement shall continue in effect for two years from the Effective Date hereof; provided however the rights contained herein with respect to sales of goods at the Outlet Stores shall terminate on that date which is three months from the Effective Date, at which time Licensees shall remove from the Outlet Stores all signs and other items and materials incorporating or bearing any of the Marks, all of which Licensees promptly shall destroy.

7. **Effect of Termination**

Upon the termination of this Agreement, Licensees shall immediately discontinue and cease their use of the Marks and any terms confusingly similar thereto, delete any reference to the same from their corporate or business names (which names are being changed pursuant to Section 5.9 of the Purchase Agreement), cooperate with Licensor or its appointed agent to apply to the appropriate authorities to cancel any recordation of this Agreement from all government records and destroy all printed material in their possession and control bearing the Marks.

8. **Representations and Warranties of Licensor**

Licensor represents and warrants to Licensees, its successors and assigns that it has full power and authority to enter into this Agreement and that it is subject to no previous agreements or understandings having terms or conditions which are inconsistent or in conflict with the terms of this Agreement.

9. **Indemnification by Licensee**

(a) Licensees hereby jointly and severally save and hold Licensor and its affiliates harmless of and from and shall indemnify each of them against any and all losses, liability, damages and expenses (including attorney's fees and expenses) which they, or any of them, may incur or be obligated to pay, or for which they, or any of them, may become liable or be compelled to pay in any action, claim or proceeding against them, or any of them, for or by reason of any acts, whether of omission or commission, that may be committed or suffered by Licensees, or any of them, or any of their respective servants, agents or employees in connection with Licensees' performance of this Agreement. The provisions of this Paragraph 9(a) and Licensees' obligations hereunder shall survive the expiration or termination of this Agreement.

(b) Until the earlier of (i) the expiration of this Agreement or (ii) with respect to each Outlet Store, the discontinuance of operations at such Outlet Store, Licensees shall maintain general liability insurance insuring Licensor against any loss, liability or expense arising from or in connection with the maintenance, operation or occupancy of any of the Outlet Stores. Each insurance policy must have a limit of liability no less than that as heretofore had been maintained by Licensees in respect of the Outlet Stores. Licensor must be included as an additional insured in each such insurance policy. Licensees shall furnish Licensor with copies of certificates of insurance showing compliance with the foregoing. No such insurance policy may be canceled or altered without at least 30 days prior written notice to Licensor. The existence of such insurance shall not modify or limit the indemnification provisions of Paragraph 9(a) above or Licensees' obligations thereunder.

10. **Governing Law**

It is agreed that this Agreement shall be interpreted and governed according to the substantive laws of the State of New York.

11. **Miscellaneous**

This Agreement sets forth the entire understanding and agreement of the parties with respect to the subject matter hereof, may not be modified, discharged or terminated, nor may any of the provisions hereof be waived, orally and shall be binding upon and inure to the benefit of the successors and assigns of the Licensor. Neither this agreement nor any of the rights granted to Licensees hereunder may be assigned, sublicensed or otherwise transferred by any of them; provided, however, Licensees may assign such rights hereunder to any agent of Licensees performing any "going out of business" sale approved by the Bankruptcy Court (as defined in the Purchase Agreement) as are necessary to conduct such sale.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

LICENSEES:

**STARTER CORPORATION**

By: _____
Name: John C. Warfel
Title: Senior Vice President

**STARTER GALT, INC.**

By: _____
Name: John C. Warfel
Title: Senior Vice President

LICENSOR:

**OFFICIAL STARTER LLC**

By:   Jubilee Limited Partnership

   By:   Schottenstein Professional Asset Management Co., its General Partner

   By: _____
   Name: Benton E. Kramer
   Title: Vice President

**[Signatures Continued on Following Page]**

### 10. Governing Law

It is agreed that this Agreement shall be interpreted and governed according to the substantive laws of the State of New York.

### 11. Miscellaneous

This Agreement sets forth the entire understanding and agreement of the parties with respect to the subject matter hereof, may not be modified, discharged or terminated, nor may any of the provisions hereof be waived, orally and shall be binding upon and inure to the benefit of the successors and assigns of the Licensor. Neither this agreement nor any of the rights granted to Licensees hereunder may be assigned, sublicensed or otherwise transferred by any of them; provided, however, Licensees may assign such rights hereunder to any agent of Licensees performing any "going out of business" sale approved by the Bankruptcy Court (as defined in the Purchase Agreement) as are necessary to conduct such sale.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

LICENSEES:

**STARTER CORPORATION**

By: _____
Name: John C. Warfel
Title: Senior Vice President


**STARTER GALT, INC.**

By: _____
Name: John C. Warfel
Title: Senior Vice President

LICENSOR:

**OFFICIAL STARTER LLC**

By:  Jubilee Limited Partnership

    By:  Schottenstein Professional Asset
        Management Co., its General
        Partner

By: _____
Name: Benton E. Kramer
Title: Vice President

[Signatures Continued on Following Page]

STARTER OUTLET STORES, INC.

By: _____
    Name: John C. Warfel
    Title: Senior Vice President


STARTER DELAWARE, INC.

By: _____
    Name: John C. Warfel
    Title: Senior Vice President

PHIL1\195840-4

-5-

# Schedule A

## Marks

"Marks" shall have the meaning of "Trademarks" as defined in Section 1.1 of the Purchase Agreement.

Attached hereto, for convenience of reference only and without the purpose of limiting the above meaning, is a copy of Schedule D: Trademarks to the Purchase Agreement.